IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| JULIE MITCHELL, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | NO. 4:18-CV-00850-NKL |
| | ) | |
| DEPUY ORTHOPAEDICS, INC., *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER**

Before the Court is defendants' motion to dismiss for lack of personal jurisdiction, Doc. 29, and defendants' motion for leave to file supplemental authority, Doc. 41. For the following reasons, both motions are denied as moot, and the case is transferred to the United States District Court for the District of Kansas.

**I.  Background**

Plaintiffs Julie and Timothy Mitchell, residents of Jackson County, Missouri, initiated this action after Julie Mitchell was twice implanted with an Attune device, an allegedly faulty full knee replacement product, at a medical facility in Paola, Kansas. Doc. 1 (Complaint), ¶¶ 5–6, 108–11. Defendants, corporate entities affiliated with Johnson & Johnson, are not alleged to be organized under the laws of Missouri or alleged to have principal places of business in Missouri.[1] The Mitchells allege negligence, strict liability, warranty, misrepresentation, fraud and loss of consortium claims based on defendants' connection with the design, license, manufacture,

---

[1] Rather, defendants are alleged to be organized under the laws of and have principal places of business in a combination of other states or countries, including Massachusetts, Indiana, Delaware, New Jersey, the United Kingdom and Ireland. *Id.* at ¶¶ 7–30.

1

distribution, sale and marketing of the Attune device.[2]  *See, e.g., id.* at ¶¶ 11–29, 118, 129, 146, 152, 155, 163, 167, 178, 188.

## II. Discussion

Defendants contend that Missouri courts lack personal jurisdiction on the basis that plaintiffs' claims all arise out of events that took place in Kansas, rather than Missouri, and none of the defendants have sufficient contacts in Missouri to support general jurisdiction.  Doc. 30, p. 3.  Plaintiffs concede that the Court lacks general jurisdiction over the defendants, Doc. 37, p. 6, but argue that because the Mitchells have suffered the effects of their injury in Missouri, and because the defendants market and sell the allegedly defective product in Missouri, jurisdiction is proper.  Doc. 37.  Alternatively, plaintiffs request that the Court transfer the case to Kansas.  *Id.*

### A. Specific Jurisdiction

"When jurisdiction is challenged on a pretrial motion to dismiss, the 'nonmoving party need only make a prima facie showing of jurisdiction.'"  *Pangaea, Inc. v. Flying Burrito LLC*, 647 F.3d 741, 745 (8th Cir. 2011) (citation omitted).  When a court relies on pleadings and affidavits to resolve the motion, "the court must look at the facts in the light most favorable to the nonmoving party, and resolve all factual conflicts in favor of that party."  *Id.* (citation omitted).

"In order to satisfy the due process clause, a defendant must have 'minimum contacts [with the forum state] such that the maintenance of the suit does not offend traditional notions of fair

---

[2] There are 13 defendants named in the suit: Depuy Synthes Sales, Inc. d/b/a Depuy Synthes Joint Reconstruction; Depuy Orthopaedics, Inc.; Depuy International Limited; Johnson & Johnson Services, Inc.; Johnson & Johnson International; Medical Device Business Services, Inc., Depuy Inc.; Depuy Synthes Products, Inc.; Depuy Synthes, Inc.; Depuy Ireland Unlimited Company; Depuy Synthes Johnson & Johnson Ireland Ltd.; Johnson & Johnson; and Depuy Mitek, LLC.  All defendants join the motion except DePuy Synthes Johnson & Johnson Ireland Ltd.  Doc. 30, n. 2.

play and substantial justice.'" [3]  *Id.* (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).  "The primary focus of [the] . . . inquiry is the defendant's relationship to the forum State." *Bristol-Myers Squibb Co. v. Superior Court of Cal.*, 137 S. Ct. 1773, 1779 (2017).  Such relationship is created when a defendant "'purposefully directs' his activities toward forum residents" or otherwise "purposefully establishe[s] 'minimum contacts' in the forum." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473–74 (1985) (citations omitted).  In other words, contacts "that the 'defendant *himself*' creates with the forum State" serve as a basis for jurisdiction, *Walden v. Fiore*, 571 U.S. 277, 284 (2014) (citations omitted), but contacts formed by "the mere 'unilateral activity of those who claim some relationship with a nonresident defendant'" do not. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 298 (1980) (citation omitted).

As only specific jurisdiction is alleged in this case, "the injury giving rise to the lawsuit [must have] occurred within or had some connection to the forum state, meaning that the defendant[s] purposely directed [their] activities at the forum state and the claim arose out of or relates to those activities.'" *Johnson v. Arden*, 614 F.3d 785, 795 (8th Cir. 2010) (citation omitted).  Specific jurisdiction does not exist when the defendant's contacts with the forum lack a connection to "the specific claims at issue." *Bristol-Myers Squibb*, 137 S. Ct. at 1781.

The Mitchells assert the following connections between this case and Missouri: 1) the Mitchells live in Missouri and "deal with the effects of the damage cause by Defendants' defective implants every day, within Missouri," Doc. 37, p. 3; 2) Mrs. Mitchell receives treatment related to her knee surgeries in Missouri, Doc. 37-1 (Julie Mitchell Affidavit), ¶ 6; 3) defendants regularly

---

[3] Although challenges to personal jurisdiction over a nonresident defendant typically start with an analysis of the forum's long-arm statute, Missouri's long-arm statute extends to all cases where due process permits the exercise of jurisdiction, *Clune v. Alimak AB*, 233 F.3d 538, 541 (8th Cir. 2000) (citing *State v. Pinnell*, 454 S.W.2d 889, 892 (Mo. 1970)), and thus, the Court need only consider whether the exercise of jurisdiction would comport with due process.

advertise, promote, market and sell the knee replacement product in the Western District of Missouri, Doc. 1, ¶¶ 6–30, 40, 100.  However, these connections are not sufficient to support specific jurisdiction.

Only the last allegation—regarding defendants' sales, advertising and business operations—relates to defendants' activities in Missouri, rather than plaintiffs' activities.  Although plaintiffs' residency can be relevant if, through "defendant's relationship with the plaintiff, [it] enhance[s] defendant[s'] contacts with the forum," *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 780 (1984), plaintiffs here do not allege that defendants' activities were directed at them in Missouri or that their connection with defendants otherwise enhanced defendants' contacts in state.  Rather, plaintiffs' residence, the place of plaintiffs' suffering and post-surgery care all represent "unilateral" choices made by either plaintiffs or Mrs. Mitchell's doctors.  *See World-Wide Volkswagen*, 444 U.S. at 298.  "However significant the plaintiff's contacts with the forum may be, those contacts cannot be 'decisive in determining whether the defendant's due process rights are violated.'"  *Walden*, 571 U.S. at 285 (2014) (citation omitted).  Therefore, these connections are not evidence that the defendants "purposefully established" contacts in Missouri.

Plaintiffs essentially argue that a "short drive," across a state border, should not preclude jurisdiction because, given defendants' contacts in Missouri, the Mitchells' claims could just as easily have arisen out of defendants' activities in Missouri, rather than Kansas.  Doc. 37, p. 13.  However, "[u]nder Plaintiffs' theory of jurisdiction, a national company could be sued by any resident of any state in any state.  This does not comport with 'traditional notions of fair play and substantial justice' as required by the Constitution."  *Keeley v. Pfizer Inc.*, No. 15-583, 2015 WL 3999488, at *3 (E.D. Mo. July 1, 2015) (citing *Daimler AG v. Bauman*, 134 S.Ct. 746, 754 (2014))

(dismissing claims when plaintiff took allegedly dangerous drug and was injured in another state).[4]

Moreover, although plaintiffs argue that defendants' nationwide and in-state marketing and distribution activities support specific jurisdiction, the general allegations are not tied to the specific claims at issue in this case. Plaintiffs allege that defendants have placed their product into the stream of commerce throughout the United States and within Missouri and conducted business in Missouri, *see, e.g.,* Doc. 1, ¶¶ 6–30, 100, but do not claim to have bought the Attune device in Missouri. Plaintiffs also allege that some of the defendants have registered agents in Missouri, *id.* at ¶¶ 9–10, 15, but do not provide any basis to find that plaintiffs' injuries arise out of or are related to those contacts. While plaintiffs allege that defendants engaged in the advertising, promotion, marketing, and sale of Attune devices in Missouri, *see, e.g., id.* at ¶ 40, and that plaintiff relied on marketing or advertisement statements, *see, e.g., id.* at ¶¶ 162, 170, plaintiffs do not claim to have seen or relied on advertisements or marketing materials in Missouri or materials directed at Missouri residents. *See Dyson v. Bayer Corp.*, No. 17-2584, 2018 WL 534375, at *4 (E.D. Mo. Jan. 24, 2018) (finding that Missouri advertising "has no bearing" on jurisdiction when "plaintiffs do not allege they viewed [defendant's] advertising in Missouri"). As Mrs. Mitchell had her knee replacement surgery in Kansas, the reasonable inference is that plaintiffs' claims arise out of or are related to defendants' activity in Kansas, not Missouri. Accordingly, none of defendants'

---

[4] Focusing on the "unilateral" nature of a plaintiff's choice of residency, courts in other jurisdictions have found jurisdiction lacking in suits initiated in a plaintiff's state of residence when the plaintiff was implanted with the device or ingested medicine in another state. *See, e.g. Vorhis v. Am. Med. Sys., Inc.*, 1997 WL 476527, at * 2 (6th Cir. 1997) ("We conclude that [the plaintiff] suffered his injury at the time that the allegedly defective [devices] were implanted into his body . . . and that we should not deem the injury to follow [plaintiff] into . . . other states where he may have traveled or lived"); *Livingston v. Hoffman-La Roche Inc.*, 293 F. Supp. 3d 760, 767 (N.D. Ill. 2018) (dismissing claims brought in Illinois by a resident plaintiff who was prescribed allegedly dangerous medicine in Ohio and Wisconsin). This reasoning supports finding that defendants would be subject to specific jurisdiction based on their activities in Kansas, but not Missouri.

alleged contacts with Missouri are sufficiently related to the plaintiffs' claims to support specific jurisdiction.

Finally, plaintiffs cite *Keeton v. Hustler Magazine* to show that in-state damages, combined with defendants' marketing and sales activity in Missouri, satisfy the Due Process Clause. Doc. 37, pp. 7–8. Plaintiffs argue that if it was fair to exercise jurisdiction in *Keeton*, it is fair to exercise jurisdiction here too because the Mitchells have stronger ties to and have suffered more in Missouri than the plaintiff in *Keeton* did in that forum state.

*Keeton* found that it was not unfair for a nonresident plaintiff to sue a nonresident defendant for libel even though "the bulk of the harm done to [the plaintiff] occurred outside [the forum]." *Keeton*, 465 U.S. at 780. However, *Keeton* assessed fairness of exercising jurisdiction only after finding that the plaintiff's claims arose out of the defendant's in-state activity and that the defendant had committed a tort in the forum state. For example, the *Keeton* opinion expressly states that the defendant's "regular circulation of magazine in the forum State [was] sufficient to support an assertion of jurisdiction in a libel action based on the contents of the magazine" and that it was "unquestionable that [forum] jurisdiction over a complaint based on those contacts would ordinarily satisfy the requirement of the Due Process Clause." *Id.* at 773–74. It is this connection between defendants' contacts in the forum and the specific claims asserted that is missing in this case. *Keeton* does not provide authority for exercising jurisdiction absent those findings or for premising jurisdiction on the forum state's interest in redressing damages felt in the forum state rather than the defendant's minimum contacts.

For these reasons, the Court finds that exercising jurisdiction in Missouri does not comport with the requirements of the Due Process Clause.

**B. Plaintiffs' Request to Transfer**

6

Plaintiffs alternatively request that the case be transferred to the District of Kansas pursuant to 28 U.S.C § 1406(a).[5] Doc. 37, p. 14. Section 1406 authorizes transfer in the interest of justice "whether the court in which it was filed had personal jurisdiction over the defendants or not." *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 466 (1962). Moreover, when a "court finds that there is want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action . . . to any other such court . . . in which the action . . . could have been brought." 28 U.S.C. § 1631. Defendants do not state any opposition to transfer. Given the nature of the claims alleged, transfer is in the interest of justice. In light of defendants' position that "specific personal jurisdiction will lie . . . in the jurisdiction in which the device was implanted," Doc. 40, p. 2, and that "the Complaint makes plain that plaintiffs' claims arise from defendants' alleged activities in Kansas," Doc. 30, p. 3, it appears from the arguments before the Court that plaintiffs' claims, as alleged, could have been brought in Kansas. Accordingly, transfer is appropriate to cure jurisdictional defects.

### III.  Conclusion

For these reasons, and in the interest of justice, the Court transfers this action to the United States District Court for the District of Kansas. Defendants' motion to dismiss, Doc. 29, and motion for leave to file supplemental authority, Doc. 41, are denied as moot.

s/ Nanette K. Laughrey
NANETTE K. LAUGHREY
United States District Judge

Dated:  June 3, 2019
Jefferson City, Missouri

---

[5] Section 1406 provides, "[t]he district court of a district in which is filed a case laying venue in the wrong . . . district shall dismiss, or if it be in the interest of justice, transfer such case to any district . . . in which it could have been brought." 28 U.S.C.A. § 1406(a).